



## MEMORANDUM OPINION

No. 04-12-00297-CV

**IN THE INTEREST OF D.M.L.**, a Child

From the 216th Judicial District Court, Gillespie County, Texas
Trial Court No. 12625
Honorable Stephen B. Ables, Judge Presiding

Opinion by:     Catherine Stone, Chief Justice

Sitting:          Catherine Stone, Chief Justice
                  Sandee Bryan Marion, Justice
                  Rebecca Simmons, Justice

Delivered and Filed:   October 31, 2012

AFFIRMED

This is an appeal of an order terminating Jason L.'s parental rights to D.M.L. Jason challenges the sufficiency of the evidence to support the termination of his rights and the appointment of the Texas Department of Family and Protective Services as D.M.L.'s managing conservator. Jason also contends the trial court erred in admitting hearsay testimony. We overrule Jason's issues and affirm the trial court's order.

### SUFFICIENCY OF THE EVIDENCE

In his first point of error, Jason challenges the sufficiency of the evidence to support the jury's finding of a predicate ground for terminating his parental rights. In his second point of

error, Jason contends the evidence is insufficient to support the jury's finding that termination of Jason's parental rights was in D.M.L.'s best interest.

### A.    Standard of Review

To terminate parental rights pursuant to section 161.001 of the Family Code, the Department has the burden to prove: (1) one of the predicate grounds in subsection 161.001(1); and (2) that termination is in the best interest of the child.  *See* TEX. FAM. CODE ANN. § 161.001(1), (2) (West Supp. 2012); *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003).  The applicable burden of proof is the clear and convincing standard.  TEX. FAM. CODE ANN. § 161.206(a) (West 2006); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002).  "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2008).

Legal sufficiency review of the evidence to support a termination finding requires a court to "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d at 266.  In reviewing the factual sufficiency of the evidence to support a termination finding, a court "must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing." *Id*.  "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id*.

In reviewing the sufficiency of the evidence to support the best interest finding, we apply the factors set out in *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).  Those factors

include: (1) the desire of the child; (2) the present and future emotional and physical needs of the child; (3) the present and future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the plans held by the individual seeking custody for the child; (6) the stability of the home of the parent; (7) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (8) any excuse for the acts or omissions of the parent. *Id.* The foregoing factors are not exhaustive, and "[t]he absence of evidence about some of [the factors] would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest." *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002).

### B.       Predicate Grounds for Termination

With regard to the necessary predicate ground for terminating Jason's parent rights, the jury found that Jason: (1) knowingly placed or knowingly allowed D.M.L. to remain in conditions or surroundings which endanger her physical or emotion well-being; (2) engaged in conduct or knowingly placed D.M.L. with persons who engaged in conduct which endangers D.M.L.'s physical or emotional well-being; and (3) failed to comply with the provisions of a court order that specifically established the actions necessary for Jason to obtain D.M.L.'s return. TEX. FAM. CODE ANN. § 161.001(1) (D), (E) & (O) (West Supp. 2012). "Only one predicate finding under section 161.001(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." *In re A.V.*, 113 S.W.3d at 362.

### 1.       Jason's Conduct - § 161.001(1)(E)

"The inquiry under subsection 161.001(1)(E) relates to whether the endangerment of the child is the direct result of the parent's conduct." *In re E.A.G.*, 373 S.W.3d 129, 142 (Tex. App.—San Antonio 2012, pet. denied). "Termination under subsection 161.001(1)(E) must be

based on not just a single act or omission, but a voluntary, deliberate, and conscious course of conduct by the parent." *Id*. "Endangerment can be exhibited by both actions and failures to act." *In re S.M.L.*, 171 S.W.3d 472, 477 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

Jason divorced D.M.L.'s mother when D.M.L. was approximately one and one-half years old. Jason admitted that both he and D.M.L.'s mother drank excessively and used drugs during their marriage. After divorcing D.M.L.'s mother, Jason began a relationship with Christy who he eventually married. Christy has four children from prior relationships who also resided with Jason, Christy, and D.M.L.

D.M.L., who was twelve at the time of trial, was diagnosed with reactive attachment order. This disorder is caused by a child not being properly nurtured or parented during the first five years of the child's life. The needs of children with this disorder go unmet by their parents, causing a lack of attachment to caregivers. In addition, D.M.L. suffers from post-traumatic stress causing her to revisit or relive past trauma. D.M.L.'s counselor, Shauna Wickham, described the type of trauma that D.M.L. relives based on Jason's conduct.

D.M.L. informed Wickham that Jason would tell her she was worthless, ugly, and retarded. Jason told D.M.L. that he wished she was not his child, and Jason blamed D.M.L. for all of the family's problems, including his marital problems. On one occasion, Jason held a gun to D.M.L.'s head and told her he wished she had died earlier. Jason repeatedly beat D.M.L. with belts and paddles, including one instance in which he caused her leg to severely bleed resulting in a scar on D.M.L.'s leg which was visible in pictures shown to the jury. On a different occasion, Jason stomped on D.M.L.'s stomach after Christy fought with Jason and left the house taking only her children. D.M.L. also described an incident when Jason threw a frying pan at

her. During a therapy session with Blake, one of Christy's children, Blake told Wickham he had observed Jason grab D.M.L. by her hair and throw her against a wall.

Another one of Christy's children, Casey, testified at trial. Casey was seven when they began living with Jason and D.M.L. and was eighteen at the time of the trial. Casey recalled that Jason would throw things at D.M.L. and call her worthless, stupid, and retarded. Casey observed bruises on D.M.L. from times when Jason spanked her. Casey recalled Jason requiring D.M.L. to run in a field in the hot sun for punishment to the point that D.M.L. had to be hospitalized. Casey also observed occasions when food was withheld from D.M.L. and when she was forced to eat out of a trash can.

Both Jason and Christy denied any abuse occurred with the exception of one instance where Christy repeatedly hit D.M.L. with a flyswatter causing bruising. This incident led to one of numerous referrals and investigations by Child Protective Services. Jason and Christy both blamed the children's aunt, Christy's sister, and the father of one of Christy's children as having coached the children to fabricate lies. Although Jason initially testified that he admitted to a therapist that he cursed at the children to intimidate them, he later denied doing so. Jason quit attending therapy because he did not believe he had anything on which he needed to work or change.

Having reviewed the record as a whole, including the evidence summarized above, we hold that the evidence is legally and factually sufficient for the jury to form a firm belief or conviction that Jason engaged in conduct which endangered D.M.L.'s physical or emotional well-being. *See* TEX. FAM. CODE ANN. § 161.001(1)(E) (West Supp. 2012).

### 2. Other Predicate Grounds

Because we have concluded that the evidence is sufficient to support termination under subsection 161.001(1)(E), we do not address the sufficiency of the evidence to support the other predicate grounds. *See In re A.V.*, 113 S.W.3d at 362 (only one predicate finding necessary to support termination); TEX. R. APP. P. 47.1 (opinions should address only those issues necessary to final disposition).

### C. D.M.L.'s Best Interest

Applying the evidence presented in the case to the factors set forth in *Holley v. Adams*, we note that D.M.L. never wants to see Jason again. D.M.L. repeatedly expressed this desire to Wickham during therapy and even sent Jason a letter informing him that she never wanted to see him again. D.M.L. does, however, want a "forever life" with her current foster family. D.M.L. wants to be adopted by her foster family and to change her last name. Although D.M.L.'s emotional and physical needs were being neglected while residing with Jason, D.M.L. is thriving with the foster family who wish to adopt her. Wickham testified that D.M.L. feels loved and has regained self-esteem. The evidence demonstrated that D.M.L. suffered emotional and physical danger while residing with Jason not only at his own hands, but also at the hands of every resident of the household, including abuse by Christy and D.M.L.'s step-siblings. Despite all of the evidence presented regarding the abuse that D.M.L. suffered, Jason and Christy continue to deny that any abuse occurred. Unlike the environment she experienced living with Jason and Christy, D.M.L. feels protected and loved by her foster family. Having reviewed the record as a whole, the evidence is sufficient for the jury to form a firm belief or conviction that terminating Jason's parental rights was in D.M.L.'s best interest.

Jason's first and second points of error are overruled.

## DEPARTMENT AS MANAGING CONSERVATOR

In his third, fourth, and fifth points of error, Jason contends that the trial court abused its discretion in appointing the Department as D.M.L.'s managing conservator. First, Jason contends that the trial court should have appointed him as managing conservator. Having upheld the termination of Jason's parental rights, we reject this contention. Jason next contends that his parents should have been appointed as managing conservator. At trial, Jason testified that he listed his parents as an alternative choice for placement, and Jason asserts in his brief that "[f]riends and other relatives expand the pool from which to choose." The record contains no evidence, however, that Jason's parents approached the Department or requested the opportunity to testify at trial in an effort to be appointed as D.M.L.'s managing conservator. Although a petition in intervention was filed by D.M.L.'s maternal grandparents, the petition was voluntarily withdrawn prior to trial. Because Jason's third, fourth, and fifth points of error are unsupported by the record, they are overruled.

## ADMISSIBILITY OF EVIDENCE

In his final issue, Jason contends the trial court abused its discretion in allowing D.M.L.'s ad litem to question him regarding the findings by Child Protective Services relating to its investigation of the incident where Christy repeatedly struck D.M.L. with a flyswatter. Jason asserts the findings were inadmissible hearsay.

To preserve error with regard to the admission of evidence, a party must object each time the inadmissible evidence is offered or obtain a running objection. *Bay Area Healthcare Group, Ltd. v. McShane*, 239 S.W.3d 231, 235 (Tex. 2007). Any error in the admission of evidence is harmless where the same evidence comes in elsewhere without objection. *Richardson v. Green*, 677 S.W.2d 497, 501 (Tex. 1984).

The record in this case is replete with testimony regarding the flyswatter incident to which no objection was made. Accordingly, Jason failed to preserve his complaint for our review, and error, if any, by the trial court in overruling the objection referenced by Jason in his brief was cured by the admission of the same evidence elsewhere without objection. Jason's sixth issue is overruled.

## CONCLUSION

The trial court's order terminating Jason's parental rights is affirmed.

Catherine Stone, Chief Justice